# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MARK PIECHOTA CREFELD SCHOOL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 11-7188 |
| | : | |
| HARTFORD FIRE INSURANCE CO., | : | |
| Defendant. | : | |

**Diamond, J.**                                                                                                   Jan. 23, 2013

## MEMORANDUM

Plaintiff Crefeld School brings this coverage action against Defendant Hartford Fire Insurance Company for water damage to the School. The Parties have stipulated to the facts and cross-moved for summary judgment. *(Doc. Nos. 16, 18.)* Because I conclude that the Hartford Policy does not cover the water damage, I will grant summary judgment in favor of Hartford.

## I.    LEGAL STANDARDS

The Parties correctly agree that Pennsylvania law governs this dispute. <u>Regents of Mercerburg Coll. v. Republic Franklin Ins. Co.</u>, 458 F.3d 159, 163 (3d Cir. 2006) (an insurance contract is governed by law of state in which the contract was made).

### A.    *Summary Judgment*

Upon motion of any party, summary judgment is warranted "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). An issue is material only if it

1

could affect the result of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If the court then determines that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

    B.    *Construing the Insurance Policy*

Under Pennsylvania law, the construction of contracts—including insurance contracts—is a legal matter for the court. 12th St. Gym, Inc. v. Gen. Star Indem. Co., 93 F.3d 1158, 1165 (3d Cir. 1996) (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). In construing the Hartford Policy, I must read it as a whole. Koval v. Liberty Mut. Ins. Co., 531 A.2d 487, 489 (Pa. Super. Ct. 1987). "[A]ll provisions of a contract are to be read together and construed according to their clear meaning so as to avoid any ambiguity while at the same time giving effect to all of its provisions." Kozlowski v. Penn Mut. Ins. Co., 11 Pa. D. & C.3d 764, 768 (Pa. Com. Pl. 1979), aff'd 441 A.2d 388, 391 (Pa. Super. Ct. 1982). Policy language that is clear and unambiguous must be given its "plain and ordinary meaning." Gene & Harvey Builders, Inc. v Pa. Mfrs. Ass'n Ins. Co., 517 A.2d 910, 913 (Pa. 1986); Pa. Mfrs. Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

When policy language is ambiguous, however, the "provision is to be construed in favor of the insured and against the insurer." Somerset Indus., Inc. v. Lexington Ins. Co., 639 F. Supp. 2d 532 (E.D. Pa. 2009) (citing Venetian Blind Co., 469 A.2d at 566). A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in

more than one sense." Steele v. Statesman Ins. Co., 607 A.2d 742, 743 (Pa. 1992). The court must read the policy "according to the plain meaning of the words involved, so as to avoid ambiguity, while at the same time giving effect to all of its provisions." Del. Cnty. Const. Co. v. Safeguard Ins. Co., 228 A.2d 15, 17 (Pa. Super. Ct. 1967). The court should construe the policy to "avoid ambiguities if possible and should not torture the language to create them." Spezialetti v. Pac. Emp'rs Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985).

### C. *Coverage Exclusions and Exceptions*

The Hartford Policy is "all risk," allowing recovery for "all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." Intermetal Mexicana, S.A. v. Ins. Co. of N. Am., 866 F.2d 71, 74-76 (3d Cir. 1989). When the parties dispute the coverage provided by an all risk policy, the insurer has the initial burden of showing that a coverage exclusion applies. N. Ins. Co. of N.Y. v. Aardvark Assocs., 942 F.2d 189, 194 (3d Cir. 1991). The burden then shifts to the insured to establish that an exception to the exclusion is applicable. Fischer & Porter Co. v. Liberty Mut. Ins. Co., 656 F. Supp. 132, 140 (E.D. Pa. 1986).

## II. BACKGROUND

The Parties have stipulated to the facts and Policy provisions set out here. I have construed both in the light most favorable to the School.

3

A.     *Stipulated Facts*

The Hartford all-risk Policy insures against damage to the School.  *(Doc. No. 16 at 1; Doc. No. 17 at 3.)*  On July 6, 2010—during the Policy's pendency—the School was damaged during a heavy rainstorm.  *(Doc. No. 16 at 1.)*  A roof gutter and downspout outside the School's gymnasium diverted rain water into the bushes and shrubbery below.  *(Id.)*  Some time before the July 6th storm, however, the downspout detached from the gutter.  As a result, during the storm, rain from the gutter flowed into the gymnasium's door well.  *(Id. at 1-2.)*  The door well's storm drain became clogged with mulch and debris carried by the rain, causing the door well to fill with water.  *(Id. at 2.)*  The backed-up water then overflowed into the gymnasium, damaging the wood floor.  *(Id.)*  Although the Parties have not stipulated to the cause of the downspout detachment, they agree that Head of School Dr. Mark Piechota believes that the strap holding the downspout in place "came loose either because the wood had become rotten or one of the screws had pulled loose from the wood."  *(Id.)*

The School notified Hartford of the floor damage on August 19, 2010.  *(Id. at 3.)*  After inspecting the property and interviewing School employees, Hartford concluded that the Policy did not cover the damage.  *(Id.)*  On October 26, 2011, the School filed suit in state court, alleging breach of contract and bad faith denial of coverage.  *(Doc. No. 1.)*  Hartford removed to this Court, invoking diversity jurisdiction.  28 U.S.C. § 1332; *(Id.)*  The School has since withdrawn its bad faith claim.  *(Doc. No. 17 at 4.)*

B. *The Hartford Policy*

The Policy provides coverage for "direct physical loss or direct physical damage" to the School. *(Doc. No. 16 at 102.)* The Policy contains a number of "Specific Exclusions" to coverage, including the following:

9. Flood, Water Under the Ground

> a. We will not pay for loss or damage caused by, resulting from, arising out of, or in any way related to:
> > (1) Flood, which means:
> > > (a) Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not.
> > > (b) Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.
> > > (c) Water or other material that backs up or overflows from any sewer or septic tank, if such back-up or overflow is caused by any of the conditions in 9.a.(1)(a) and 9.a.(1)(b) above regardless of the proximity of the back-up or overflow to such conditions.
> > > (d) Flood does not include back-up or overflow of water or other material arising from any other origin.

*(Id. at 104.)*

The Policy also excludes coverage for damage caused by faulty workmanship:

28. Workmanship

> a. We will not pay for the cost of correcting defects in Covered Property, or loss or damage to Covered Property that was caused by, resulting from, or arising out of work done on Covered Property by you, your employees, or others working on your behalf.
>
> b. If direct physical loss or direct physical damage by a "Specified Cause of Loss" ensues to Covered Property or Equipment Breakdown Accident ensues to Equipment Breakdown Equipment, we will pay only for such ensuing loss or damage.

*(Id. at 106-7.)*

III. DISCUSSION

   A. *The Flood Exclusion*

Hartford has shown that its Policy does not provide coverage for the damage to the gymnasium floor. The Policy explicitly excludes damage "caused by, resulting from, arising out of, or in any way related to" flood. *(Doc. No. 16 at 104.)* The Policy defines "flood" as, *inter alia*, "surface water." *(Id.)* Under Pennsylvania law, surface water means "waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." Richman v. Home Ins. Co. of N.Y., 94 A.2d 164, 166 (Pa. Super. Ct. 1953) (quoting Fenmode, Inc. v. Aetna Cas. & Sur. Co. of Hartford, Conn., 6 N.W.2d 479, 480 (Mich. 1942)); T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 269 F. App'x 220, 223 (3d Cir. 2008). The Third Circuit has held that "in construing Pennsylvania law… rainwater, once it hit[s] the ground, 'cease[s] to be rain and, properly characterized, [is] by then surface water.'" T.H.E. Ins. Co., 269 F. App'x at 222-23 (quoting Al Berman, Inc. v. Aetna Cas. & Sur. Co., 216 F.2d 626, 628 (3d Cir. 1954)).

The stipulated facts show that the floor damage was "caused by, resulting from, arising out of, or in any way related to" surface water. *(See Doc. No. 16 at 1-2.)* Because this damage is squarely within the Flood Exclusion, the School must show that an exception applies.

   B. *The Purported Exception*

The School argues that Flood Exclusion clauses 9.a.(1)(c) and (d) create an applicable exception. Clause (1)(c) provides that damage caused by water or other material "that backs up or overflows from any sewer or septic tank" is excluded if "caused by" flood. *(Doc. No. 16 at*

6

*104.*) Clause (1)(d) provides that flood "does not include back-up or overflow of water or other material arising from any other origin." *(Id.)*

The School argues that the two clauses must be read in isolation from the rest of the Policy, so that the Flood Exclusion applies to damage caused by the back-up or overflow of water only "from any sewer or septic tank," and not "from any other origin." Because the gym floor was damaged by water overflow from a backed up storm drain—not a sewer or septic tank—the Flood Exclusion does not apply.

The School has ignored a critical Policy provision and Pennsylvania law. The Parties agree that the floor damage was caused by rain. As I have discussed, under Pennsylvania law, rain is "properly characterized" as surface water "once it hit[s] the ground." T.H.E. Ins. Co., 269 F. App'x at 222-23; Richman, 94 A.2d at 166 (surface water is water "on the surface of the ground, usually created by rain or snow"). Because the Policy explicitly excludes damage "caused by, resulting from, arising out of, or in any way related to" surface water, it necessarily excludes the damage to the gym floor. The School's contention that only the back-up or overflow from a septic tank or sewer (not a drain) is excluded misses the point. Because the Policy excludes *all* damage caused by fallen rain ("surface water"), the gym floor damage is not covered.

The School urges that it has at least demonstrated that clauses (1)(c) and (d) are ambiguous and should be construed in the School's favor. Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); see also Steele, 607 A.2d at 743. I do not agree. "A contract is ambiguous [only] if it is *reasonably* susceptible of different constructions." Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986) (emphasis added). The School

7

has read clauses 1(c) and (d) in isolation from the rest of the Policy. This is contrary to law and certainly unreasonable. "A provision of an insurance policy is ambiguous if reasonably intelligent men on considering it in the context *of the entire policy* would honestly differ as to its meaning." Celley v. Mut. Benefit Health & Acc. Ass'n, 324 A.2d 430, 434 (Pa. Super. Ct. 1974) (emphasis added). No such difference would arise here.

Finally, in limiting the "Specific" Exclusion to only those flood-related back-ups or overflows from sewers or septic tanks, the School would, as a practical matter, impermissibly read the Exclusion out of existence. GTE Corp. v. Allendale Mut. Ins. Co., 372 F.3d 598, 614 (3d Cir. 2004) (exception to an exclusion cannot be construed so broadly as to eliminate the exclusion). Plainly, clause (1)(d) creates no such wholesale exception to the Flood Exclusion. See Medicus v. Upper Merion Township, 475 A.2d 918 (Pa. Commw. Ct. 1984) (provision in Pennsylvania's Political Subdivision Tort Claims Act makes no distinction between "sewer" and "storm" drains). Rather, it creates an exception for overflows and back-ups caused by something other than "flood." For instance, water damage to the School caused by clogged pipes would not be subject to the Flood Exclusion.

### C. *The Workmanship Exclusion and Ensuing Loss Exception*

The School next argues that it is entitled to coverage because of faulty workmanship. The Policy provides that Hartford will not pay to repair damage "caused by, resulting from, or arising out of" work done by the insured or its employees. *(Doc. No. 16 at 106-7.)* There is a very limited exception, however, for "Specified" damage "ensuing" from faulty workmanship, including "water damage" from

> the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

*(Id. at 61.)* It is undisputed that this exception applies only if faulty workmanship caused the "Specified" damage. *(Doc. No. 17 at 8-9; Doc. No. 19 at 6.)* The School thus hypothesizes that the downspout outside the gym broke away from the gutter because it was improperly attached by one of the School's employees (thus triggering the Workmanship Exclusion and its "Specified" ensuing loss exception). *(Doc. No. 17 at 8.)*

Hartford responds that the broad language in the Flood Exclusion takes priority over the Workmanship Exclusion. ("We will not pay for any loss or damage caused by, resulting from, arising out of, or in any way related to… flood.") I will nonetheless assume, *arguendo*, that the Policy would cover the floor damage if the School could show that the Workmanship Exclusion and Ensuing Loss Exception applied. Unfortunately for the School, it has not made such a showing. To explain the errant downspout, the School offers only the deposition testimony of Dr. Mark Piechota, who believes that either rotten wood or a pulled screw caused the strap holding the downspout in place to come loose. *(Doc. No. 16 at 2.)*

Dr. Piechota is an educator, not a carpenter, workman, or builder. Dr. Piechota's non-expert opinion is little more than an allegation, from which the School extrapolates faulty workmanship. "A party resisting a [summary judgment] motion cannot rely upon bare assertions, conclusory allegations or suspicions." Fischer & Porter, 656 F. Supp. at 135 (citing Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982)); see also Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment). The School must thus establish by "affirmative evidence" that the

9

"Specified" loss exception applies here. Fischer & Porter, 656 F. Supp. at 135-36; Aardvark Assocs., 942 F.2d at 195 (insured must "point out to the district court facts that if proven at trial" would establish that an exception to insurance exclusion applied). The School has presented no competent evidence as to why the downspout pulled away from the gym wall. Moreover, even if I credit Dr. Piechota's non-expert belief that rotten wood or a pulled screw caused the downspout to loosen, this does not make out defective workmanship. Because the School cannot trigger the Workmanship Exclusion, it cannot benefit from its corresponding "Specified" loss exception.

IV.   CONCLUSION

Hartford has shown that the water damage to the Crefeld School's gym floor is explicitly excluded from coverage. The School has not shown that an exception to this exclusion applies. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

An appropriate Order follows.

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.